14095

HOPKINS v. WOODSIDE *ET AL.*

(180 S. E., 454)

*Messrs. Hodges & Hodges* and *W. B. McGowan,* for appellant,

*Messrs. Nettles & Poteat,* for respondent,

June 14, 1935.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

This action was commenced on May 16, 1933, and was brought for the purpose of determining the liability of the defendants upon an alleged guaranty of deposits in the Citizens Bank of Taylors, the giving of which came about in this way: In the early fall of 1926, an official examination of its books revealed that the bank was in bad financial condition, due, as claimed by the defendants, to a shortage in the accounts of the cashier, Charles Lea, of more than $26,000.00. To prevent liquidation, which seemed inevitable, and at the same time avoid the necessity of putting up a large amount of cash, Robert I. Woodside, the president of the institution, on October 20, 1926, wrote Albert S. Fant, state bank examiner, the following letter, which purported to obligate as guarantors all four of the Woodside brothers named in this suit:

"You will note from the report of Assistant Bank Examiner, W. R. Watkins, the condition of the Citizens Bank of Taylors. I have discussed the affairs of the bank with Mr. Watkins, and we have stated to him since my discovery of the conditions there my brothers and myself have assumed all liability to the depositors. We are attempting to secure from the Cashier and Mr. Hudson the amount of the shortages, and hope very much that the condition there can be withheld from the public, until we have recovered as much as possible from them.

"I have placed another man in the bank, and have taken all authority from the cashier. It is my plan to let the shortages stand as at present for a short time, using all possible pressure against the guilty parties. I will keep in close touch with your representative here, keeping him informed of all

developments. In the meantime, this letter will serve as the guarantee of the Woodside brothers to the depositors."

Although it is claimed that the shortages due to the acts of Lea were made good by the Woodside brothers, the letter was allowed to remain with the state bank examiner and was relied on by him as a "guarantee of deposits from the Woodside brothers to protect depositors from any loss they might sustain from the bank," as appears from remarks contained in his semi-annual reports with regard to its affairs. While it was stated in the report of 1927 that the bank was then "hopelessly insolvent," it did not close its doors until January 24, 1930. At a meeting of the depositors and other creditors on February 22, 1930, called for the purpose of nominating a receiver, the defendant John T. Woodside made the following proposal, which was favorably acted upon:

"Some time ago my brothers and I guaranteed the deposits of the bank to the Bank Examiner. If this had not been done, the bank would have been forced into liquidation long ago. My brothers and I of course, expect to perform this guarantee, but naturally we could not be expected to do so until the assets of the bank have been liquidated and the amount due under the guarantee thus determined. It is obvious that there is going to be a loss, and of course most of this will fall on the Woodside brothers. This makes us especially interested in the manner of the liquidation of the bank. Mr. Hopkins is cashier of the bank, entirely familiar with its affairs, and a thoroughly capable and honest man. I think he is the best man for Receiver and is especially qualified for the job. Consequently, in the interest of getting the bank liquidated in the most efficient manner possible, the Woodside brothers are willing to do this: If Mr. Hopkins is today elected Receiver and is appointed by the court, the Woodside brothers will, at the time of his appointment, deposit with the Receiver collateral satisfactory to the Bank Examiner in an amount sufficient to cover the difference between the fair present value of the

assets of the bank as determined by the Bank Examiner and the total deposits, with the understanding that if the depositors have not been paid in full by January 1, 1931, the Receiver shall have the right, as soon thereafter as will not unduly press those now owing the bank to pay their obligations to the bank, to sell said collateral, or so much thereof as may be necessary, to pay the balance due the depositors."

Thereafter the collateral, for the purpose named in the foregoing statement, was deposited with the receiver as agreed upon. However, on October 14, 1930, proceedings were instituted in the court of common pleas in the name of all of the defendants herein, in which it was sought, upon payment of $10,000.00 by them in cash, on or before January 1, 1931, to have the date of maturity of the petitioners' guaranty of the deposits extended to November 1, 1931, and the sale of the collateral postponed to the same date. The matter was heard by Judge E. C. Dennis who, in an order dated October 24, 1930, with the consent of all parties, granted the relief prayed for. Later, on January 28, 1932, a similar petition, in the name of all the defendants, was presented to the Court, in which it was asked, upon payment by the petitioners of $3,500.00 in cash, on or before February, 1932, that the date of maturity of the guaranty be extended to January 1, 1933, that the sale of the stock held by the receiver as collateral be postponed to that date, and that the forced sale of the real estate owned by the bank, as well as that on which it held mortgages, be deferred until November 1, 1932. All parties consenting thereto, judgment as asked for was given by Judge M. M. Mann, presiding in the Thirteenth Circuit, by an order dated February 18, 1932.

The present action, as appears, was prosecuted on the theory that the guaranty was given by all the defendants and received and held by the state bank examiner as a continuing one. It was alleged in the complaint, among other things,

that the depositors had been paid the aggregate sum of $21,534.31, but that a balance was due them of $47,608.-15, and that the plaintiff was entitled to recover that amount from the defendants.

Robert I. Woodside, while admitting that he had executed the guaranty on behalf of the Woodside brothers, alleged in his answer that it was only against the shortage which existed in the bank in the fall of 1926, approximately $25,-000.00, and that this shortage having been paid, the guaranty was no longer of force or effect. He also alleged that the statement made by John T. Woodside, at the depositors' meeting in 1930, was not binding upon him, Robert I. Woodside, as it was done wholly without his consent, understanding, or ratification. John T. Woodside alleged that when he made the statement that he did to the depositors, he did not then know that the guaranty that had been given the bank examiner by Robert I. Woodside was a limited one, and that he made the statement under a misapprehension as to its exact nature.

The defendants E. F. Woodside and J. D. Woodside admitted by their answer that they were interested in the Citizens Bank of Taylors, but denied that they dominated its affairs or took part in its management or control, claiming that it was looked after by Robert I. Woodside until the year 1929, when he became ill, and thereafter by John T. Woodside; that they knew nothing of the guaranty of the deposits made by Robert I. Woodside; and that they never authorized him to execute such a paper on their behalf and had never ratified his action. They further alleged that John T. Woodside, in making the statement at the depositors' meeting in 1930, after the bank had closed its doors, that the Woodside brothers had guaranteed the deposits in the bank, did so without their knowledge, consent, or ratification; and that the same was true with regard to his later filing petitions asking for an extension of the date of the maturity of the guaranty.

On trial of the case the Court, on motion of counsel for plaintiff, struck from the record all testimony offered by the defendants which tended to conflict with the terms of the guaranty as determined under the decrees of Judge Dennis and of Judge Mann, holding that these decrees were an adjudication of the contract of guaranty, and that such testimony in this action amounted to a collateral attack thereon, and directed a verdict for the plaintiff in the sum of $32,986.41, that sum being the net loss to the depositors. From judgment duly entered, this appeal is taken.

The correctness of the holding of the trial Court, that the order of Judge Dennis and the order of Judge Mann were judgments and not subject to collateral attack in this action, is challenged by the defendants' ninth exception. This question we will now consider.

While the appellants admit the general rule that matters adjudicated by the Court cannot be attacked in collateral proceedings, they contend that this rule is not applicable here, for the reason, as stated by them, that "no liability of the defendants was adjudicated—there was no issue." They argued that the orders taken only granted an extension of time, by consent of John T. Woodside and the receiver, for payment of such guaranty as the former thought to be in existence, "but which in fact was not in existence." They also concede that under the general rule the authority of an attorney to appear for a client in a cause is shielded from attack in a collateral proceeding and that relief from an unauthorized appearance must be obtained by proper proceedings in the original cause, but say that his authority to appear "should be presumed only so far as his conduct in the handling of the case falls within the generally accepted sphere or scope of his implied powers."

In *Dibble v. Taylor,* 2 Speers, 308, 311, 42 Am. Dec., 368, in passing upon a similar question, the Court made the following declaration: "A judgment is the conclusion of the law upon facts found, or admitted."

In 15 R. C. L., 569, the writer says: "A judgment is the conclusion of the law upon the matters contained in the record, or the application of the law to the pleadings and to the facts, as found by the Court or admitted by the parties, or deemed to exist upon their default in a course of judicial proceedings."

In *Sanders v. Price,* 56 S. C., 1, 33 S. E., 731, 732, the plaintiff Sanders, with others, brought an action against the defendant Price, who claimed title to the lands in litigation, as set out in the Court's opinion, "under a decree for sale of said land, as the property of B. S. Porter's estate, under partition proceedings in the case of *Porter et al. v. Porter et al.,* in which, as shown by the record, the plaintiffs in this action appeared as parties plaintiff by their attorney, C. E. Robinson, Esq." The record in the *Porter case* was introduced in evidence in the *Sanders case;* and over objection of the defendant Price, the plaintiffs were permitted to testify that they never employed Mr. Robinson or authorized any one to employ him, and did not know their names were being used in the action for the sale of the lands. Upon this testimony the trial Judge held the proceedings and judgment in *Porter v. Porter* void as to the plaintiffs, and decreed partition in their favor. Upon appeal, however, this Court reversed the judgment below, saying:

"We think the circuit Court erred. The proceedings in the case of *Porter v. Porter,* under which the defendants claim title, were regular on their face. The record disclosed no jurisdictional defect, as the Court had undoubted jurisdiction of the subject-matter of the suit, and it appeared on the record that plaintiffs were parties duly represented by an attorney at law. In this state the law does not require, nor is it customary, that attorneys claiming to represent parties file warrants of attorney. When an attorney appears on the record for a party, a presumption arises that he appears by authority. *Bailey v. Boyce,* 5 Rich. Eq. [187], 200; *Latimer v. Latimer,* 22 S. C. [257], 263.

"The judgment in *Porter v. Porter* is not void, but merely voidable; for the alleged jurisdictional defect is not manifest from an inspection of the record, which presumptively shows the contrary, but is only made to appear by evidence *de hors* the record. Such judgment, being merely avoidable, is not subject to collateral attack, and must be held as valid and conclusive until set aside by a direct proceeding instituted for that purpose in that cause. *Turner v. Malone,* 24 S. C. [398], 404; *Crocker v. Allen,* 34 S. C. [452], 457, 13 S. E., 650 [27 Am. St. Rep., 831]; *Gillam v. Arnold,* 35 S. C. [612], 613, 14 S. E., 938; *Martin v. Bowie,* 37 S. C. [102], 114, 15 S. E., 736; *Prince v. Dickson,* 39 S. C. [477], 480, 18 S. E., 33; *Hankinson v. R. R. Co.,* 41 S. C. [1], 18, 19 S. E., 206; *Hunter v. Ruff,* 47 S. C. [525], 552, 25 S. E., 651 [58 Am. St. Rep., 907]. These actions cannot be considered such direct proceedings brought for the purpose of impeaching the judgment in question. It follows, also, that the parol testimony upon which the Circuit Court relied in contradiction of the record was incompetent in these actions. *Parr v. Lindler,* 40 S. C. [193], 197, 18 S. E., 636. The judgment under which the defendants claim title, until set aside in a proper proceeding, is a complete defense to plaintiffs' action for partition, and should have been so held by the circuit court.'

See, also, *Bailey v. Cooley,* 153 S. C., 78, 150 S. E., 473, and authorities there cited.

It will be seen, from a reading of the statement made by John T. Woodside at the meeting of the depositors in 1930, that he proposed, as the act of the Woodside brothers, if their choice for receiver were agreed to, to put up certain collateral to the guaranty, with the understanding that if the depositors were not paid in full by January 1, 1931, the receiver should sell such collateral and pay the balance due them. Thereafter, the appellants, finding that they could not make full payment by that date, petitioned the Court in the receivership proceedings, into which they came voluntarily

by counsel, their petition being verified by one of their number. They raised no question in such proceedings as to the extent of the guaranty. On the contrary, it was admitted that the guaranty was of the deposits generally, and that all four of the defendants were bound thereby. On the basis of that admission, and upon payment in cash by them of a certain sum named, they asked that the maturity of the guaranty, January 1, 1931, be extended to a date named in the petition, and that during such extension the receiver should not sell the collateral to the guaranty, or the real estate owned by the bank or covered by its mortgages. It also appears that the matter was duly heard by a Circuit Judge, with all proper parties before him, the receiver and others admitting the facts alleged in the petition and not opposing the prayer of the petitioners. Later, the appellants filed a similar petition, asking for a further extension of time and for a further postponement of the date of the sale of the collateral.

Clearly, there was an issue for judicial determination made in these proceedings, namely, whether the petitioners were entitled to have the time of payment of their guaranty extended and the receiver enjoined from selling the collateral and the bank's real estate in the meantime. In the nature of things, the Court could not adjudge that the guaranty should be extended without adjudging that it was of force and that the petitioners were bound thereby. The Court, having jurisdiction of the subject-matter, adjudicated this issue by its decrees, under the facts alleged and admitted.

With regard to the right of the appellants to attack collaterally the authority of the attorneys who appeared for them in the matters named, no sound reason is shown for the exception to the general rule which is sought to be made in this case. The contention that one might learn of a judgment against him for the first time when he came to trial on the second suit, even if admittedly of some merit, is without

472

application here, for the reason that the complaint was served upon the defendants a year and a half before the present case came to trial, and if the defendants desired to attack the authority of the attorneys to appear for them in the receivership proceedings, they had ample time to do so.

We conclude, therefore, under the authorities cited, ■ that the orders of Judge Dennis and Judge Mann were not subject to collateral attack in this action and that the trial Court correctly struck from the record all testimony offered by the defendants which tended to conflict with the terms of the guaranty as determined and adjudicated by the Court's orders. When all of such testimony was stricken out, that remaining was susceptible of the inference only that the guaranty was a continuing one and that all four of the defendants were bound thereby. Hence, the direction of a verdict for the amount stated, which was agreed to be the net loss to the depositors, was proper. This conclusion renders unnecessary a consideration of the other questions presented by the appeal.

All exceptions are overruled and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.