14840

*EX PARTE* GREENVILLE COUNTY

APPEAL OF BOWEN *ET AL.,* COUNTY ATTORNEYS

(2 S. E. (2d), 47)

*Messrs. Nicholls & Russell, Barron, Barron & Walker* and *C. S. Bowen,* for appellants,

*Mr. Wilton H. Earle,* for respondent,

March 14, 1939.

The opinion of the Court was delivered by Mr. Justice Fishburne.

The appellants, W. E. Bowen and Dakyns B. Stover, former county attorneys for Greenville County, are appealing from an order of his Honor Judge H. F. Rice, of date April 21, 1938, wherein he declared null and void two orders of date June 2 and June 3, 1937, passed by his Honor Judge Sease. By these orders certain fees were al-

lowed and ordered to be paid to these attorneys by the County Board of Commissioners of Greenville County.

The facts out of which this case arose are fully stated in the opinion of this Court filed February 7, 1938, *Ex Parte Hart et al., In re Bowen et al.,* 186 S. C., 125, 195 S. E., 253, 254. For a proper understanding of the present issue we repeat that statement:

"On June 2, 1937, the appellants, W. E. Bowen and Dakyns B. Stover, county attorneys for the County of Greenville, which is embraced within the thirteenth judicial circuit, made an *ex parte* application to his Honor, T. S. Sease, resident Circuit Judge of the adjoining seventh circuit, at his chambers in Spartanburg, for an order authorizing the payment of extra compensation to them as such attorneys, under Section 33 of the Greenville County Supply Act (Acts 1937, page 1071). The petition presented to Judge Sease was accompanied by an affidavit of Mr. Bowen, setting forth that Hon. G. Dewey Oxner, the resident Circuit Judge of the thirteenth judicial circuit, was then absent from his circuit.

"Upon this *ex parte* petition of the appellants, Judge Sease, after taking testimony offered in support of the allegations of the petition, and also upon the question of the reasonableness of the fee prayed for passed an order authorizing the payment of $3,000.00 to each of the said petitioners. The order further provided 'that said sum be forthwith paid to each of the petitioners by the Greenville County Supervisor, Board of County Commissioners and County Treasurer out of the contingent fund as provided in said Supply Act, in the same manner as salaries are paid to the public officials of the county upon the petitioners presenting their vouchers for same with a certified copy of this order attached.' Later in the day of June 2d, the petitioners, upon their return to Greenville from Spartanburg, learned that Judge Oxner was actually in his circuit on that day. It appears that Judge Oxner, in accordance

with plans previously made by him, had intended to be away from his circuit on June 2d; and upon inquiry, he had so advised the petitioners, but due to an unexpected change in his plans he did not leave the thirteenth circuit until early in the morning of June 3d. The petitioners, therefore, appeared before Judge Sease at his chambers at Spartanburg again on the following day (June 3d), and presented an affidavit reciting the above facts, and the further fact that Judge Oxner was absent that day from the thirteenth circuit, and that there was no other Circuit Judge presiding therein. Upon consideration of these facts, and without taking further testimony, his Honor, Judge Sease, then passed another order, bearing date June 3d, in which he specifically adopted and confirmed his order of June 2d, and declared it valid and of full force and effect. Both orders were duly filed in the County of Greenville, and thereafter the county paid the petitioners the fees therein provided for.

"As stated, the petition presented to Judge Sease was *ex parte*. Neither the County of Greenville nor any person or board representing the county, was made a party thereto.

"On June 11, 1937, J. Ed Hart, a citizen and taxpayer of Greenville County, on behalf of himself and all others similarly situated, and the Greenville County Bar Association, copetitioners (which association joined in the petition in accordance with a resolution passed by it, whose members, as shown by the petition, are likewise taxpayers, of Greenville County), presented their verified petition to his Honor, Judge Sease, at his chambers in Spartanburg, praying that a rule be issued by him requiring W. E. Bowen and Dakyns B. Stover, county attorneys, for Greenville County, to show cause why the orders dated June 2, 1937, and June 3, 1937, should not be declared void, vacated and set aside, and for such other and further relief as may be proper in the premises. This petition denied the jurisdiction of the Court, upon the facts stated, to issue the afore-

said orders, and further challenged the validity of the orders upon the ground that they were granted in proceedings wholly *ex parte,* without notice to Greenville County. The reasonableness of the fees allowed was also questioned. Upon consideration of this petition a rule was issued by Judge Sease, returnable before him on June 17, 1937, at his chambers at Spartanburg, requiring and d i r e c t i n g Messrs. Bowen and Stover to show cause why the said orders should not be vacated, and adjudged null and void, and why the petitioners should not be granted the relief prayed for in their petition. In accordance with the order, a copy of the rule and petition, with accompanying affidavits, were duly served upon these attorneys, and also upon the secretary of th|e Greenville County Delegation, the chairman of the County Board of Commissioners of Greenville County, and on the treasurer of Greenville County, each of whom was given leave to file a return to the petition. No returns, however, were filed by any of these county officials, except a formal return by the treasurer, which merely stated that he had paid out the money pursuant to the orders referred to.

"Messrs. Bowen and Stover, appellants here, filed their return, setting up several defenses.

"At the hearing before Judge Sease on June 17th counsel for the appellants objected to the jurisdiction of the Court, on the ground that it did not appear by affidavit,. either at the time of the issuing of the rule, on June 11, 1937, or at the date of the hearing, on June 17, 1937, that the resident Judge of the thirteenth judicial circuit (embracing Greenville County) was out of the circuit, and that there was no special or regular Judge presiding therein."

For the reasons set out in the opinion filed in the foregoing case, this Court held that Judge Sease lacked jurisdiction to issue his order of June 17, 1937.

Following the decision of this Court in *Ex parte Hart, supra,* Greenville County, which was not a party to the

proceedings resulting in the orders of June 2 and June 3, 1937, filed its petition in the case at bar, by Honorable Wilton H. Earle, its present county attorney, praying that the orders of June 2 and June 3, 1937, be declared null and void, upon the many grounds therein specified. The appellants, Bowen and Stover, demurred to the petition, raising several legal issues, and, subject to their rights under the demurrer, answered and set up ten defenses. A full hearing was had before his Honor Judge Rice, resulting in his order declaring the said orders referred to null and void.

While many issues have been raised by the numerous exceptions of the appellants, we find it necessary to consider and pass upon only the first exception.

Error is charged to the lower Court in holding that Mr. Earle, the county attorney for Greenville County, had authority to institute and maintain this proceeding. It is contended that the county attorney, having instituted the proceeding of his own motion and upon his own volition, without knowledge, consent or authority of the governing board of Greenville County to wit: the County Board of Commissioners of Greenville County, the Court had no jurisdiction of Greenville County, lacked power or authority to proceed further in the cause, and should have dismissed the proceeding.

By their answer, the appellants specifically challenged the authority of the county attorney to bring this proceeding on behalf of Greenville County, and on this issue testimony was taken before Judge Rice. When the secretary of the County Board of Commissioners was on the stand, she was asked to state whether or not that body had authorized the county attorney to bring this action. Before she could reply, Mr. Earle took the position that the County Board of Commissioners under the Act appointing them, is merely an advisory board, without authority to direct the county attorney to do anything. He then admitted on the record

that the County Board of Commissioners had not authorized or instructed him to institute the proceeding.

The lower Court held that the testimony of the secretary of the board, that she "knew" of no resolution by the board authorizing the suit, was not sufficient "to overcome the presumption that the county attorney was authorized to take the action he did." And further held that "it was easy enough (for the appellants) to produce one of the commissioners in Court to clarify the matter and sustain the claim if it were true, and this was not done."

We think the lower Court misapprehended the testimony. So far as the record shows, the secretary gave no testimony on the point. Her testimony was interrupted, and she left the stand without testifying as to this matter, and at a time when Mr. Earle frankly stated that he had no authority or instruction from the board. With this admission before the Court, the question then became a purely legal one, as to whether or not Mr. Earle was authorized, as county attorney, to bring this proceeding without instruction from the board. And the answer to this question necessarily involves a consideration of a further holding of the Court which immediately followed what we have quoted above: "In addition, without going into the matter of whether or not the county attorney could institute the action on his own motion, the fact is, the county supervisor, the executive officer of the county, verified the petition."

The power and authority of the county attorney is to be found in Act 643, Statutes of 1934, page 1202, Sec. 2, which reads: "Said attorney shall represent Greenville County and all of its officers in matters relating to said County, shall give them advice when called upon and it is their duty to go to him for advice."

By this language it seems to us clear that the conventional relation of client and attorney was established between Greenville County and the county attorney. In our opinion, this Act neither expressly nor impliedly vests in the county

attorney the power or authority to institute an action in the name of the county upon his own initiative, without consulting the governing board of the county, and without its consent or instruction thereabout.

The law does not require, nor is it customary, that attorneys claiming to represent parties, file warrants of attorney. When an attorney appears on the record for a party, a presumption arises that he appears by authority. *Bailey v. Boyce,* 5 Rich. Eq., 187, 200; *Latimer v. Latimer,* 22 S. C., 257, 263; *Sanders v. Price,* 56 S. C., 1, 33 S. E., 731; *Hopkins v. Woodside,* 176 S. C., 463, 180 S. E., 454. But presumption of authority, so far as the County Board of Commissioners is concerned, went out of this controversy when the county attorney admitted that he had no such authority.

It therefore becomes necessary to consider whether the county attorney was given the needed authority to institute the action by reason of the fact that the county supervisor verified the petition. The question naturally arises, what person or board in Greenville County is clothed with executive authority?

The Act of 1937 (page 596), which created the County Board of Commissioners of Greenville County and defined their powers and duties, was in effect when this proceeding was instituted.

Sections 2, 3, and 4 provide for the creation of the board and the method of appointment of its personnel. Section 5 provides that the three commissioners "shall effect their own organization and make rules and regulations governing their own officials and the officials and administration of the department of the county's government touching any of its business and financial affairs * * *. They shall hold stated meetings at least once a month, and such meetings as shall be necessary to properly and efficiently *control and manage the county's affairs,* and to carry out the functions of their office, and shall keep minutes of their meetings and

shall make and forward to each member of the Legislative Delegation of Greenville County quarterly statements showing sums borrowed, paid and unpaid, and cash balances on hand."

Section 6 provides: "The said board shall have supervisory control of all the business and financial affairs of the county, including the right to designate the depositories of all county funds, and including the right and power to approve or disapprove all e x p e n d i t u r e s of county funds. * * * No special levies shall be made in any school district in said County without the written approval of said board, nor shall any bonds be issued or sold by any political subdivision of said county without the written approval of said Board." This paragraph likewise authorizes the board to employ a full time business secretary and other clerical· assistance.

The respondent contends that the supervisor of Greenville County is its executive head; that the foregoing Act merely creates a county financial Board, and does not take away from the supervisor powers given to him under the general law.

It seems to us that the whole tenor of the Act runs to the contrary of this proposition.

By the terms of the Act (Sec. 5), the board is given authority to "control and manage the county's affairs and to carry out the functions of their office." Also the commissioners are given the power to make rules and regulations governing the officials and the administration of the department of the county's government touching any of its business and financial affairs.

It is unnecessary to go into further detail by calling attention to the other quoted provisions of the Act, giving to the commissioners the ultimate power to approve or disapprove all expenditures of county funds. The provisions of the Act, taken by and large, clothe the Board of Commissioners with broad executive powers, and the language

used for this purpose can reasonably lead to no other conclusion but that this Board is constituted as the executive head of Greenville County, with authority to administer the executive affairs of the county. This being true, even if the verification of the petition by the supervisor, who is not a member of the board, be deemed as the equivalent of a positive instruction coming from him to institute the proceeding, it cannot confer that authority. As long as this Act remains effective, the supervisor would have no more authority to authorize the bringing of a proceeding and involving the county in litigation than would the county treasurer, the sheriff, or any other like official of the county.

A Board of County Commissioners, vested with such broad powers as are conferred in this Act, ordinarily exercises the corporate powers of the county. As was said in *Werts v. Feagle,* 83 S. C., 128, 65 S. E., 226, 229: "It is for all financial and ministerial purposes the county, and it is clothed with authority to do whatever the corporate or political entity, the county, might do, if capable of rational action, except in respect to matters the cognizance of which is exclusively vested in some other officer or person. It is, in an enlarged sense, the representative and guardian of the county, having the management and control of its property and financial interest, and having original and exclusive jurisdiction over all matters pertaining to county affairs * * *."

A county as a corporate entity, like other corporations, can act only through its duly constituted authorities, and we take it that the proposition must be conceded, that the institution of legal proceedings by a county must of necessity be authorized by those who are vested by law with power and authority to "control and manage the county's affairs." Under the law, the commissioners are given this power, and the record shows that they have not exercised it by authorizing this proceeding. The record shows affirmatively that the County Board of Com-

missioners not only defaulted and made no return before Judge Sease on June 17th, when the validity of these orders was at issue, but positively declined to make such return and contest the matter.

The appearance of the county attorney in the case at bar is presumptive evidence of his authority to represent the county for which he appears, and it is held uniformly that it is not necessary for him to show his authority in order to proceed with the suit, unless demand is made therefor. But this is a rebuttable presumption, and this presumption was overthrown beyond question when the county attorney stated in open Court that he had no authority from the county commissioners. We think that the lower Court erred in the refusal to dismiss the petition.

Contemporaneously with the institution of this action, another action, based upon similar facts and praying similar relief—that is, that the orders of Judge Sease of June 2 and June 3, 1937, be declared invalid—was brought by J. Ed Hart, a taxpayer, and Greenville County Bar Association. These two proceedings were heard together by Judge Rice in the lower Court, and all issues found against W. E. Bowen and Dakyns B. Stover. Separate appeals were taken to this Court upon separate records, and the cases were argued separately, although in all substantial effects they involve the same questions.

The issues which we are precluded from passing upon in the appeal in the instant case, by reason of the fact that Greenville County is not properly before the Court, will be considered and passed upon in the companion case above referred to.

Judgment reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.